IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CT-03084-FL

| | | |
|---|---|---|
| CHRISTOPHER M. OXENDINE-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| | ) | |
| THOMAS HARIHAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This case comes before the court upon Plaintiff Christopher Oxendine-Bey's ("Plaintiff") motions for default judgment as to Defendant Thomas Harihan ("Harihan"), to which Harihan did not respond.[1] [DE-94, -108, -109]. Plaintiff, a North Carolina inmate, filed his original complaint on April 10, 2012. [DE-1]. In his complaint, Plaintiff accused Harihan of sexually assaulting him while Plaintiff was an inmate at a correctional facility where Harihan worked as a physician's assistant. [DE-1] at 3-4. Plaintiff filed an amended complaint on January 22, 2013. [DE-28]. Default was entered as to Harihan on August 14, 2013. [DE-47]. Plaintiff has now moved for default judgment as to Harihan [DE-94, -108, -109], and the motions were referred to the undersigned for hearing. June 2, 2015 Order [DE-111] at 6. The court held an evidentiary hearing on June 25, 2015, to establish the truth of Plaintiff's allegations and to determine the amount of damages, if any, to which Plaintiff may be entitled. *See* Fed. R. Civ. P. 55(b)(2)(B)-(C). For the reasons stated herein, the undersigned recommends granting Plaintiff's motion for default judgment

---

[1] In his motion filed on May 14, 2015 [DE-109], Plaintiff moved for summary judgment against Harihan, and the district court has construed the motion as one for entry of default judgment. June 2, 2015 Order [DE-111] at 6.

and awarding Plaintiff $10,000.00 in damages.

## I. PROCEDURAL HISTORY

On April 10, 2012, Plaintiff filed a complaint asserting claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment to the United States Constitution. Compl. [DE-1]. Plaintiff's claims arise out of incidents on May 12 and June 24, 2009, while he was an inmate at Pasquotank Correctional Institution ("Pasquotank") in Pasquotank County, North Carolina. *Id.* at 3; Am. Compl. [DE-28] at 2. The complaint named as Defendants four Pasquotank employees: Thomas Harihan, Jane Swain, Robert G. Jones, and John Sturz.[2] Compl. [DE-1] at 1-3. Plaintiff alleged that Harihan used excessive force against him in violation of the Eighth Amendment, Swain and Jones displayed deliberate indifference to Plaintiff's safety, and Struz displayed deliberate indifference to Plaintiff's serious medical needs and failed to provide Plaintiff with adequate mental and emotional treatment in violation of the Eighth Amendment. *Id.* at 5-13.

On January 7, 2013, Defendants Jones, Struz, and Swain moved to dismiss the complaint on the grounds that Plaintiff failed to state a claim upon which relief may be granted. [DE-25]. In response to Defendants' motion to dismiss, Plaintiff moved to amend his complaint to include Sergeant Jane Whitfield, Sergeant John Sledge, Sergeant Jane Boston, Officer John Ford, Officer John James, Officer John Ownes, Officer John Davis, Officer Jane Walker, Lieutenant John Brothers, Officer Jane Spella, Sergeant Jane Kassy, Unit Manager John Shaw, and Captain John Doe as Defendants in this action. [DE-28] at 1-2. Plaintiff alleged the new Defendants displayed deliberate indifference to Plaintiff's safety and failed to protect him from the alleged sexual assaults

---

[2]Throughout the filings, the spelling of Defendant John Struz's name alternates between "Struz" and "Sturz." For consistency, the undersigned hereinafter refers to this Defendant as "Struz."

inflicted by Harihan. *Id.* at 5-7, 15-20. Defendants Jones, Struz, and Swain subsequently filed a motion for a protective order [DE-35], and Plaintiff filed a motion for entry of default against Defendant Harihan [DE-38].

On August 5, 2013, the court entered an order granting Plaintiff's motion to amend as a matter of course and conducted a frivolity review of Plaintiff's amended pleading.[3] Aug. 5, 2013 Order [DE-39]. The court allowed Plaintiff to proceed with his claims that Defendants Swain, Boston, Jones, and Doe failed to protect him from the alleged sexual assault, Harihan used excessive force against him, and Defendant Struz acted with deliberate indifference to his serious medical needs. *Id.* at 10-11. The court dismissed the remaining claims against the remaining Defendants without prejudice for failure to state a claim upon which relief may be granted. *Id.* at 7-11. Because the court permitted Plaintiff to amend his complaint, the court denied as moot Defendants' motion to dismiss. *Id.* at 10. The court also denied Defendants' motion for a protective order. *Id.* at 11. The court found that Harihan failed to answer Plaintiff's complaint within the twenty-one day period set forth in Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure. *Id.* at 10. Accordingly, the court granted Plaintiff's motion for entry of default as to Harihan. *Id.* at 11. The clerk of court subsequently made an entry of default as to Harihan on August 14, 2013. [DE-47].

On August 12, 2013, Plaintiff filed a motion for default judgment as to Harihan. [DE-45]. Plaintiff then filed another motion for entry of default and several more motions for default judgment. [DE-49, -50, -52, -53]. Plaintiff also filed a motion for contempt [DE-48] and a motion

---

[3] By virtue of the amendment, additional persons were added as defendants. *See* Aug. 5, 2013 Order [DE-39] at 4. Default has been entered as to Defendant Harihan only as to Plaintiff's original complaint, and, thus, the undersigned is not considering judgment as the claims set forth in Plaintiff's amended complaint. Hr'g Tr. [DE-125] at 7-8.

3

for leave to amend his complaint to name the John Doe Defendant [DE-63]. On October 16, 2013, the court entered an order granting Plaintiff's motion to amend, substituted Douglas Blowe for the John Doe Defendant, and added John Spence as a Defendant. Oct. 16, 2013 Order [DE-67]. The court also denied Plaintiff's motions for default judgment without prejudice and denied Plaintiff's motion for contempt. *Id.* at 2. The court was later informed that the party Plaintiff identified as John Spence was actually Kem Kilpatrick Spence, and Kem Spence was substituted for John Spence. [DE-104] at 1.

On September 12, 2014, Plaintiff filed a motion for summary judgment as to Harihan. [DE-90]. On October 10, 2014, Plaintiff filed another motion for summary judgment and a motion for default judgment as to Harihan. [DE-94]. Defendants Blowe, Boston, Jones, K. Spence, Struz, and Swain then filed a cross-motion for summary judgment [DE-95], arguing that Plaintiff had failed to established a constitutional violation. [DE-96] at 10-14. On December 29, 2014, the court denied Plaintiff's September 12, 2014 motion for summary judgment as premature and denied Plaintiff's October 10, 2014 motion for summary judgment as premature only as to Harihan. Dec. 29, 2014 Order [DE-104] at 2.

On May 14, 2015, Plaintiff filed a motion for a writ of mandamus, a motion for voluntary dismissal, and a motion for default judgment. [DE-108]. Plaintiff additionally filed a motion for summary judgment as to Harihan. [DE-109]. On June 2, 2015, the court granted Plaintiff's motion for voluntary dismissal, and all claims were dismissed from this action without prejudice, with the exception of the claims against Harihan. June 2, 2015 Order [DE-111] at 6. The court denied the parties' cross-motions for summary judgment. *Id.* The court construed Plaintiff's May 14, 2015 motion for summary judgment against Harihan as another motion for entry of default judgment. *Id.*

4

The Plaintiff's motion for a writ of mandamus was denied as moot. *Id.* Finally, the court referred Plaintiff's motions for default judgment [DE-94, -108, -109] to the undersigned for hearing. *Id.* On June 9, 2015, the undersigned appointed North Carolina Prisoner Legal Services, Inc., as counsel for the limited purpose of providing Plaintiff with representation at the default judgment hearing. June 9, 2015 Order [DE-112].

On June 16, 2015, Plaintiff filed a motion to appoint counsel [DE-115], a motion for paperwork [DE-116], and a notice of interlocutory appeal [DE-117]. On June 18, 2015, the court denied Plaintiff's motion to appoint counsel as moot and denied Plaintiff's motion for paperwork as premature. June 18, 2015 Order [DE-120] at 3-4, 6. The court construed Plaintiff's notice of interlocutory appeal as a motion for reconsideration of the court's decision to refer his motions for entry of default judgment to the undersigned. *Id.* at 4. The court denied plaintiff's motion for reconsideration. *Id.* at 4-6.

## II. STATEMENT OF THE FACTS

The undersigned held a hearing on June 25, 2014, at which Plaintiff appeared, represented by counsel, and Defendant Harihan did not appear. Plaintiff was the only witness at the hearing. Plaintiff introduced eleven exhibits, which included a letter from Plaintiff's counsel, Plaintiff's prior administrative filings, and an order from the North Carolina Medical Board. Compl. Exs. A-J [DE-1-1] at 1-17; Ex. List [DE-123]; Hr'g Tr. [DE-125] at 23-39. As developed at the hearing, this action arose out of events that occurred at Pasquotank on May 12 and June 24, 2009, when Plaintiff was an inmate in the segregation unit of the facility. Hr'g Tr. [DE-125] at 4-5. In the segregation unit, inmates are unable to move about the prison, may only leave their cells for one hour each day in full

5

restraints.[4] *Id.* at 9. In order to request medical care while in the segregation unit, an inmate must make a "sick call" and wait three to seven days to see a medical provider in the medical unit. *Id.*

On May 12, 2009, Plaintiff went to the medical unit complaining of back pain. *Id.* at 4. Plaintiff described his back pain as cramping that caused his back to "lock[] up." *Id.* at 10. When Plaintiff's back locked up, Plaintiff was unable to walk or get out of bed. *Id.* Plaintiff believed his back pain was caused by the steel bunks at Pasquotank and a prior medical injury. *Id.* at 9-10. At this appointment, Plaintiff was examined by Harihan. *Id.* at 4. During the examination, Harihan made comments of a sexual nature to Plaintiff, which made Plaintiff uncomfortable. *Id.* at 11, 19. As Plaintiff exited the examination room, Harihan "smacked [Plaintiff] on his butt." *Id.* at 4-5, 11, 19.

After the examination, Plaintiff informed Swain, the head nurse at the medical unit, of the sexual and verbal assaults he experienced during his examination by Harihan. *Id.* at 19. Swain told Plaintiff that she believed him because there had been other reports from other inmates of similar incidents with Harihan. Compl. [DE-1] at 7; Hr'g Tr. [DE-125] at 19-21. Plaintiff also told several other officers about his encounter with Harihan, but none of the officers took his complaints seriously and failed to provide Plaintiff with medical care. Compl. [DE-1] at 4-5, 12-13; Hr'g Tr. [DE-125] at 13. Following the May examination, Plaintiff said he felt "degraded" and "like less than a man" and that he had "no sense of security." Hr'g Tr. [DE-125] at 20.

In June 2009, Plaintiff continued to experience back pain. Compl. [DE-1] at 3; Hr'g Tr. [DE-125] at 10. On June 24, 2009, Plaintiff was escorted to the medical unit in full restraints. Compl.

---

[4]Plaintiff described full restraints as wearing handcuffs behind one's back, while being bound by ankle shackles and a waist chain. Hr'g Tr. [DE-125] at 9.

6

[DE-1] at 3; Hr'g Tr. [DE-125] at 11. Plaintiff described the examination room as a "conference exam room" with a window to the outside hallway. Compl. [DE-1] at 3; Hr'g Tr. [DE-125] at 21. When Plaintiff arrived at the medical unit, Harihan was already in the examination room. Hr'g Tr. [DE-125] at 11. Plainitff was surprised to see Harihan in the examination room because of the May 12, 2009 incident. *Id.* Due to the shortage of medical providers at Pasquotank, Plaintiff did not have the option of seeing a different doctor or physician's assistant if he wanted treatment. *Id.* at 21-22. During the examination, Harihan raised Plaintiff's shirt and rubbed Plaintiff's chest. Compl. [DE-1] at 3-4; Hr'g Tr. [DE-125] at 12. Plaintiff tried to move away from Harihan, but his movements were limited because his hands were handcuffed behind his back. Hr'g Tr. [DE-125] at 12. Harihan then "braced hi[m]self up against" Plaintiff. *Id.* at 12. Harihan asked Plaintiff if Plaintiff had a big penis and whether he would let Harihan see his penis. Compl. [DE-1] at 4; Hr'g Tr. [DE-125] at 12. When Plaintiff tried to back away from Harihan, Harihan grabbed Plaintiff, reached into Plaintiff's pants, and fondled Plaintiff's penis. Compl. [DE-1] at 4; Hr'g Tr. [DE-125] at 12. Plaintiff then screamed out for help from Officer Ford, who was standing on the other side of the door. Pl's Compl. [DE-1] at 4; Hr'g Tr. [DE-125] at 11, 13. Plaintiff continued to yell, and Harihan tried to calm Plaintiff down. Hr'g Tr. [DE-125] at 13. Plaintiff was very upset and left the examination room. Compl. [DE-1] at 4; Hr'g Tr. [DE-125] at 13. Once again, Plaintiff told several officers about the incident following the examination, but the officers did not take Plaintiff's complaints seriously or investigate the matter. Compl. [DE-1] at 4-5, 7; Hr'g Tr. [DE-125] at 13.

Following the May 12 and June 24, 2009 incidents, Plaintiff began to have problems coping with the assaults and experienced cold sweats, nightmares, and recurring memories of the abuse. Hr'g Tr. [DE-125] at 15. Plaintiff described himself as "depress[ed], ang[ry], frustrated, and

7

mental[ly] and emotionally unstable." Compl. [DE-1] at 9. As a child, Plaintiff was sexually molested by an uncle, and the feelings of being powerless and helpless he experienced as a child resurfaced. Compl. [DE-1] at 9; Hr'g Tr. [DE-125] at 14-15, 22-23. Plaintiff attempted to receive sexual counseling through the Prison Rape Elimination Act ("PREA") while at Pasquotank. Compl. Exs. C, E-G [DE-1-1] at 3-7; Hr'g Tr. [DE-125] at 15. However, Plaintiff was denied adequate medical treatment. Compl. [DE-1] at 7-12; Hr'g Tr. [DE-125] at 15-16. Specifically, Plaintiff was not properly screened for mental health problems and his treatments were often unreasonably delayed. Compl. [DE-1] at 8. Plaintiff eventually received counseling from Dr. Struz for two years and received medications for depression. Hr'g Tr. [DE-125] at 16. At the time of the hearing, Plaintiff was receiving mental health treatment but was still experiencing nightmares, lack of focus, and night sweats. *Id.* at 17.

After three other inmates came forward with allegations against Harihan and nurses corroborated the reports of inappropriate behavior, Harihan resigned from Pasquotank. Compl. [DE-1] at 7; Hr'g Tr. [DE-125] at 25-26. In 2010, Harihan and the North Carolina Medical Board entered a consent order that resulted in Harihan's physician's assistant license being indefinitely suspended. Hr'g Ex. 2 [DE-123]; Hr'g Tr. [DE-125] at 27.

### III. LEGAL STANDARD

Once default has been entered under Rule 55(a) of the Federal Rules of Civil Procedure, Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading. Fed. R. Civ. P. 55(a), (b)(2). Upon default, the well-pleaded facts alleged in the complaint, as to liability, are deemed admitted. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *E.E.O.C. v. Carter Behavior Health Servs., Inc.*, No.

8

4:09-CV-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011), adopted 2011 WL 5325473 (E.D.N.C. Nov. 3, 2011). However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, the court must consider whether the unchallenged facts support the relief sought. *Id.* (citing *Weft, Inc. v. G. C. Inv. Assocs.*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986)); *Carter*, 2011 WL 5325485, at *3.

If the court determines that liability is established, it then must determine the appropriate amount of damages. Unlike allegations of fact, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *see Carter*, 2011 WL 5325485, at *3-4. The court must make an independent determination regarding such allegations by, for example, conducting an evidentiary hearing. Fed. R. Civ. P. 55(b)(2)(B).

## IV. DISCUSSION

In the instant case, Plaintiff is pursuing a claim under 42 U.S.C. § 1983 and seeks monetary damages for the pain and suffering caused by the sexual assaults. Plaintiff seeks default judgment against Harihan. [DE-94, -108, -109]. Accepting all of the factual allegations of Plaintiff's complaint as true, the court must therefore determine whether Plaintiff has established a claim against Harihan and, if so, the amount of damages to which he is entitled.

### A. Liability

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*,

9

509 U.S. 25, 31 (1993). "A prison guard may violate the Eighth Amendment by . . . sexually assaulting an inmate. Sexual assault is 'not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries' under § 1983." *Ellis v. Elder*, No. 7:08-CV00642, 2009 WL 275316, at *3 (W. D. Va. Feb. 4, 2009) (unpublished) (quoting *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998)). "To be actionable, the alleged sexual contact must be incompatible with 'contemporary standards of decency.'" *Id.* (quoting *Helling*, 509 U.S. at 32). "In stating such a claim, however, the inmate must allege facts on which he could prove that the unwanted touching had some sexual aspect to it; his own perceptions alone that the contact was of a sexual nature are not sufficient." *Id.* (citing *Berryhill*, 137 F.3d at 1076-77 (finding that a civilian maintenance worker's brief touch to inmate's buttocks that was not accompanied by any sexual comments or banter was not actionable as a sexual assault claim under § 1983); *Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (finding no Eighth Amendment violation arising from allegation that correctional officer touched plaintiff's testicles through his clothing during a single pat-down frisk and did not make any sexual comment to plaintiff during the frisk, although sexual comments had been made in the past) (citation omitted)).

Here, Plaintiff has alleged sufficient facts to show a sexual assault in violation of the Eighth Amendment. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995) (holding defendant committed constitutional violations when he made sexual comments about plaintiff's penis and buttocks and rubbed plainitff's buttocks with a nightstick during a strip search). On two separate occasions, Harihan made sexual comments and sexually touched Plaintiff. Compl. [DE-1] at 3-4; Hr'g Tr. [DE-125] at 12, 19, 22. The most egregious incident occurred on June 24, 2009, when

10

Harihan rubbed Plaintiff's chest in a suggestive manner, asked Plaintiff if he had a big penis and if Plaintiff would let him see, reached inside Plaintiff's pants, and fondled Plaintiff's penis. Compl. [DE-1] at 4; Hr'g Tr. [DE-125] at 12. The combination of the unwanted sexual touching and sexual comments made to Plaintiff on two separate occasions is sufficient to show a constitutional violation. *See Seltzer-Bey*, 66 F.3d at 963.

Therefore, given that the unchallenged facts constitute a legitimate cause of action, the undersigned finds Plaintiff is entitled to default judgment against Harihan and recommends that default judgment be entered against Harihan.

**B.     Damages**

"After a court determines, as here, that a judgment by default should be entered, it must determine the amount and character of the recovery that should be awarded." *Etters v. Shanahan*, No. 5:09-CT-3187-D, 2013 WL 787344, at *4 (E.D.N.C. Feb. 6, 2013) (unpublished) (citation omitted). "Section 1983 creates 'a species of tort liability,' [*Carey v. Piphus*, 435 U.S. 247, 253 (1978)], and, therefore, 'when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts[,]' [*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)]." *Evans v. Hous. Auth. of City of Raleigh, N.C.*, No. 5:04-CV-291-FL, 2008 WL 2550756, at *7 (E.D.N.C. June 25, 2008) (unpublished) (citation omitted). "While '[d]eterrence is . . . an important purpose of [§ 1983] . . . it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses.'" *Id.* (quoting *Stachura*, 477 U.S. at 307). Punitive damages may be awarded to plaintiffs in a § 1983 action "to deter or punish malicious deprivations of rights." *Carey*, 435 U.S. at 266.

11

The Prison Litigation Reform Act ("PLRA") places limitations on the ability of prisoners to recover damages in civil suits. *See* 42 U.S.C. § 1997e(e) (effective Apr. 26, 1996 to Mar. 6, 2013) (stating that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Effective March 7, 2013, § 1997e(e) was amended to expressly allow actions for mental or emotional injury based on "the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e); *see* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113–4, 127 Stat. 134. Yet even prior to amendment, the courts recognized that a sexual assault can qualify as a "physical injury" under PLRA and for purposes of a § 1983 claim. *See Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *3 (E.D.N.C. May 25, 2011) (unpublished) (citing *Kahle v. Leonard*, 563 F.3d 736, 741-42 (8th Cir. 2009); *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (providing no description of the alleged sexual assault but stating that, "[n]evertheless, accepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than *de minimis* injury if they occurred.")); *see also Duncan v. Magelessen*, No. 07-CV-01979, 2008 WL 2783487, at *2, 4 (D. Colo. July 15, 2008) (unpublished) (concluding that, where the plaintiff alleged that the defendant repeatedly fondled his penis during pat-down searches, the plaintiff was not barred by PLRA from seeking damages, despite his failure to allege physical injury, because "unwanted sexual contact, alone, is a physical injury for which there may be compensation"); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1264 (D. Kan. 1999) (concluding that, where a prison guard allegedly placed his hand in the prisoner's pants, caressed his buttocks, and stroked his genitalia, such a sexual assault qualified as a physical injury under § 1997e(e), precluding dismissal).

12

A plaintiff's inability to prove out-of-pocket loss or monetary harm does not bar a claim for compensatory damages under § 1983. *Nimmons v. Clark*, No. 1:13-CV-03786, 2015 WL 1191210, slip op. at 3 (N.D. Ga. Mar. 16, 2015) ("A federal court may award monetary damages, under Section 1983, for pain and suffering even if the plaintiff cannot present evidence of out-of-pocket loss or monetary harm.") (citations omitted). However, "courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251 (4th Cir. 1996) (citations omitted); *Carrington*, 2011 WL 2132850, at *4 (denying an award of compensatory damages when plaintiff failed to submit evidence showing he had sought clinical, psychological, or other treatment). "[I]n determining the propriety and amount of compensatory damages, courts look to factors such as loss of esteem, physical injury, psychological counseling, loss of income, the degree of distress, the context of the underlying events, corroborative evidence, the nexus between the challenged conduct and distress, and mitigating circumstances." *Carrington*, 2011 WL 2132850, at *4 (citing *Price*, 93 F.3d at 1254).

Here, Plaintiff seeks compensatory damages in the amount of $50,000.00, alleging he sustained "mental and emotional distress" as a result of Harihan's sexual assault on Plaintiff. Compl. [DE-1] at 8. Plaintiff experienced cold sweats, nightmares, and recurring memories of the abuse, Hr'g Tr. [DE-125] at 15, and described himself as "depress[ed], ang[ry], frustrated, and mental[ly] and emotionally unstable." Compl. [DE-1] at 9. Plaintiff was further traumatized due to the fact that he experienced prior sexual assaults as a child. Compl. [DE-1] at 9; Hr'g Tr. [DE-125] at 14-15, 22-23. Plaintiff submitted evidence showing he sought and obtained medical treatment for his mental and emotional distress after he was sexually assaulted by Harihan. Compl.

13

Exs. C, F-I [DE-1-1] at 3, 6-13; Hr'g Tr. [DE-125] at 15-17. Plaintiff initially attempted to receive sexual counseling through PREA while at Pasquotank, but was denied treatment. Compl. Exs. C, E-G [DE-1-1] at 3-7; Hr'g Tr. [DE-125] at 16. Plaintiff continued to seek treatment and eventually received counseling from Dr. Struz for two years and received medications for depression. Hr'g Tr. [DE-125] at 16. At the time of the hearing, Plaintiff was still receiving mental health treatment. *Id.* at 17. Since the sexual assault is a physical injury and Plaintiff has made the appropriate showing of compensable injuries in terms of pain and suffering, Plaintiff is entitled to compensatory damages. *See Etters*, 2013 WL 787344, at *4-6 (awarding compensatory damages for emotional distress when plaintiff suffered physical harm, sought mental health treatment, and attended counseling once a month as a result of the sexual assaults). Accordingly, based on the facts and circumstances presented here, the undersigned recommends that Plaintiff be awarded compensatory damages in the amount of $5,000.00. *See Riley v. Olk-Long*, 282 F.3d 592, 593-95 (8th Cir. 2002) (affirming an award of $15,000.00 in compensatory damages when defendant consciously disregarded a serious risk of harm and plaintiff was sexually touched several times and raped due to defendant's disregard); *Cleveland v. Curry*, No. 07-CV-02809-NJV, 2014 WL 690846, at *1-2 (N.D. Cal. Feb. 21, 2014) (unpublished) (awarding between $2,000.00 and $10,000.00 in compensatory damages when defendant squeezed plaintiffs' penises and/or scrotums for several seconds and plaintiffs suffered physical, mental, and/or emotional injuries); *Ivey v. Toomey*, No. 9:11-CV-85, 2012 WL 1995246, at *1-2 (E.D. Tex. Apr. 12, 2012) (unpublished) (awarding $25,000.00 in compensatory damages when defendant tried to force the plaintiff to perform oral sex on him, fondled plaintiff's breasts, and sexually assaulted plaintiff, resulting in bruising, bleeding, and mental and emotional injuries); *Campbell v. Graham*, No. 3:06-CV-444, 2010 WL 2901826, *1-3 (E.D. Tenn. July 21,

14

2010) (unpublished) (awarding $25,000.00 in compensatory damages when defendant performed non-consensual oral sex on plaintiff and forced plaintiff to perform oral sex on defendant).

Plaintiff also seeks punitive damages in the amount of $25,000.00. Punitive damages may also be awarded to plaintiffs in a § 1983 action "to deter or punish malicious deprivations of rights." *Carey*, 435 U.S. at 266. "Punitive damages are available in an action under § 1983 'when the defendant's conduct is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others.' Punitive damages are discretionary, and are awarded 'to punish the defendant for his outrageous conduct and to deter him and others from similar conduct in the future.'" *Carrington*, 2011 WL 2132850, at *4 (quoting *Smith v. Wade*, 461 U.S. 30, 54, 56 (1983)) (internal citation omitted). "Moreover, 'punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury.'" *Id.* (quoting *Carlson v. Green*, 446 U.S. 14, 22 n.9 (1980)).

Here, the evidence shows that the assaults on Plaintiff were motivated by evil motive and intent and were carried out with reckless and callous disregard to Plaintiff's federally protected rights. An award of punitive damages will punish Harihan for his outrageous conduct while deterring others from similar conduct in the future. *See Carrington*, 2011 WL 2132850, at *4. Accordingly, the undersigned recommends Plaintiff be awarded punitive damages in the amount of $5,000.00. *See id.* at *5 (awarding plaintiff $5,000.00 in punitive damages when defendant forced plaintiff to strip naked, grabbed plaintiff's penis, and attempted to perform fellatio on him).

## V. CONCLUSION

In accordance with the foregoing, the undersigned RECOMMENDS that Plaintiff's motions

15

for default judgment be GRANTED as to Harihan and that Plaintiff be awarded compensatory damages in the amount of $5,000.00 and punitive damages of $5,000.00, for total damages of $10,000.00

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 5, 2015** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **14 days** of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SO SUBMITTED, the 22nd day of July 2015.

                                                     Robert B. Jones, Jr.
                                                     United States Magistrate Judge