IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3084-FL

| | | |
|---|---|---|
| CHRISTOPHER M. OXENDINE-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| THOMAS HARIHAN, JANE SWAIN, ROBERT G. JONES, SERGEANT JANE WHITFIELD, SERGEANT JOHN SLEDGE, SERGEANT JANE BOSTON, OFFICER JOHN FORD, OFFICER JOHN JAMES, OFFICER JOHN OWNES, OFFICER JOHN DAVIS, OFFICER JANE WALKER, LIEUTENANT JOHN BROTHERS, OFFICER JANE SPELLA, SERGEANT JANE KASSY, UNIT MANAGER JOHN SHAW, CAPTAIN JOHN DOE, DOUGLAS BLOWE, JOHN SPENCE, KEM KILPATRICK SPENCE, and JOHN STRUZ, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

The matter comes before the court on plaintiff's motions for default judgment (DE 94, 108, 109), motion to appoint counsel (DE 124), motion "requesting for the courts to allow for the defendant [] Harihan retirement che[]ck be use to help pay the plaintiff for any damages that might be rewarded by the courts" (DE 136), and motion to freeze defendant Harihan's assets (DE 137). Defendant Harihan did not respond to plaintiff's motions. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") (DE 126) as to plaintiff's motions for default

judgment wherein he recommends that the court grant plaintiff's motions and that plaintiff be awarded compensatory damages in the amount of $5,000.00 and punitive damages in the amount of $5,000.00, for total damages of $10,000.00. Plaintiff timely filed objections to the M&R (DE 132), and defendant Harihan did not respond. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the findings of the magistrate judge, grants plaintiff's motions for default judgment, and awards plaintiff $5,000.00 in compensatory damages and $5,000.00 in punitive damages. The court denies plaintiff's remaining motions.

## STATEMENT OF THE CASE

The court has extensively detailed the procedural posture of this action in prior orders. For ease of reference, pertinent portion of the statement of the case set forth in the June 2, 2015, order, is restated here:

> On April 10, 2012, plaintiff brought this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, against defendants Thomas Harihan ("Harihan"), Robert G. Jones ("Jones"), John Struz ("Struz"), and Jane Swain ("Swain"). Plaintiff raised claims related to his alleged sexual assault by Harihan.
>
> On January 7, 2013, defendants Jones, Struz, and Swain filed a motion to dismiss arguing that plaintiff failed to state a claim upon which relief may be granted. In response to defendants' motion to dismiss, plaintiff filed a motion to amend his complaint to include Sergeant Jane Boston ("Boston"), Sergeant Jane Whitfield ("Whitfield"), Sergeant John Sledge ("Sledge"), Lieutenant John Brothers ("Brothers"), unit manager John Shaw ("Shaw"), Officer John Ownes ("Ownes"), Officer Jane Walker ("Walker"), Officer John Davis ("Davis"), Officer John James ("James"), Officer Jane Spella ("Spella"), Sergeant Jane Kassy ("Kassy"), John Ford ("Ford"), and Captain John Doe ("Doe") as defendants in this action. Plaintiff alleged that the new defendants failed to protect him from the alleged sexual assaults inflicted by defendant Harihan. Plaintiff also alleged that defendant Struz acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution and that defendant Harihan used

2

excessive force against him in violation of the Eighth Amendment. Defendants subsequently filed a motion for a protective order, and plaintiff filed a motion for entry of default against defendant Harihan.

On August 5, 2013, the court entered an order granting plaintiff's motion to amend as a matter of course, and conducted a frivolity review of plaintiff's amended pleading. The court allowed plaintiff to proceed with his claim that defendants Swain, Boston, Jones, and Doe failed to protect him from the alleged sexual assault, defendant Harihan used excessive force against him, and defendant Struz acted with deliberate indifference to his serious medical needs. The court dismissed the remaining claims against the remaining defendants without prejudice for failure to state a claim upon which relief may be granted. Because the court permitted plaintiff to amend his complaint, the court denied as moot defendants' motion to dismiss. The court also appointed North Carolina Prisoner Legal Services ["NCPLS"] for the limited purpose of conducting discovery as to assist plaintiff with identifying the John Doe defendant. Finally, the court denied defendants' motion for a protective order and granted plaintiff's motion for entry of default as to defendant Harihan. The clerk of court subsequently made an entry of default against defendant Harihan on August 14, 2013.

In the interim, on August 12, 2013, plaintiff filed a motion for entry of default against defendant Harihan. Plaintiff then filed another motion for entry of default and two more motions for default judgment. Plaintiff also filed a motion for contempt, and a motion for leave to amend his complaint to name the John Doe defendant. On October 16, 2013, the court entered an order granting plaintiff's motion to amend and substituted Douglas Blowe for the John Doe defendant as well as added defendant John Spence ("J. Spence") as a defendant. The court also denied plaintiff's motion for default judgment without prejudice and denied plaintiff's motion for contempt. The North Carolina Attorney General later informed the court that the party plaintiff identified as J. Spence was actually Kem Kilpatrick Spence ("K. Spence") and K. Spence was substituted for J. Spence.

On October 10, 2014, plaintiff filed a motion for summary judgment and a motion for default judgment as to defendant Harihan. Defendants Blowe, Boston, Jones, K. Spence, Struz, and Swain then filed a cross-motion for summary judgment, arguing that plaintiff failed to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. The

3

> cross-motions for summary judgment were fully briefed. Plaintiff subsequently filed a motion for summary judgment as to defendant Harihan, a motion for a writ of mandamus, motion to voluntary dismiss, and motion for default judgment.

See (DE 111).

On June 2, 2015, the court entered an order granting plaintiff's motion for voluntary dismissal as to defendants Swain, Jones, Struz, Boston, Blowe, and K. Spence, leaving defendant Harihan as the sole remaining defendant in this action. The court in its June 2, 2015, order also denied as moot plaintiff's motion for a writ of mandamus and the parties' cross-motions for summary judgment. The court construed plaintiff's motion for summary judgment as to defendant Harihan as another motion for entry of default judgment. Finally, the court referred plaintiff's motions for entry of default judgment to Magistrate Judge Robert B. Jones, Jr. for a hearing thereon.

The magistrate judge subsequently set the matter for hearing on June 25, 2015, and appointed Michele R. Luecking-Sunman of NCPLS for the limited purpose of providing plaintiff representation at the hearing. On June 16, 2015, plaintiff filed a motion to appoint counsel and a motion for paperwork. Plaintiff also filed a pleading which the clerk of court construed as a motion for an interlocutory appeal. On June 18, 2015, the court entered an order denying plaintiff's motion to appoint counsel as moot and premature. The court also denied as premature plaintiff's motion for paperwork. Finally, the court construed plaintiff's pleading captioned "Appeal" as a motion for reconsideration, and denied such motion.

The magistrate judge conducted a hearing on plaintiff's motion for entry of default judgment on June 25, 2015. After the June 25, 2015, hearing, plaintiff filed another motion for appointment of counsel to assist plaintiff with executing his judgment. Then, on July 22, 2015, the magistrate judge entered his M&R. The magistrate judge recommended that plaintiff's motions for entry of

4

default judgment as to Harihan be granted and that plaintiff be awarded compensatory damages in the amount of $5,000.00 and punitive damages of $5,000.00, for total damages of $10,000.00.

On August 6, 2015, plaintiff filed a motion for an extension of time to file his objections to the magistrate judge's M&R, which the court granted. Plaintiff filed his objections the next day. Plaintiff then filed a motion "requesting for the courts to allow for the defendant [] Harihan retirement che[]ck be use to help pay the plaintiff for any damages that might we rewarded by the courts" and a motion to freeze defendant Harihan's assets.

**STATEMENT OF FACTS**

The magistrate judge summarized the relevant facts, as developed at hearing and as set forth in plaintiff's eleven exhibits including, a letter from plaintiff's counsel, plaintiff's prior administrative filings, and an order from the North Carolina Medical Board. The facts as found by the magistrate judge are as follows:

> As developed at the hearing, this action arose out of events that occurred at Pasquotank [Correctional Institution ("Pasquotank")]on May 12 and June 24, 2009, when Plaintiff was an inmate in the segregation unit of the facility. Hr'g Tr. [DE-125] at 4-5. In the segregation unit, inmates are unable to move about the prison, may only leave their cells for one hour each day in full restraints. _Id._ at 9. In order to request medical care while in the segregation unit, an inmate must make a "sick call" and wait three to seven days to see a medical provider in the medical unit.[1] _Id._
>
> On May 12, 2009, Plaintiff went to the medical unit complaining of back pain. _Id._ at 4. Plaintiff described his back pain as cramping that caused his back to "lock[] up." _Id._ at 10. When Plaintiff's back locked up, Plaintiff was unable to walk or get out of bed. _Id._ Plaintiff believed his back pain was caused by the steel bunks at Pasquotank and a prior medical injury. _Id._ at 9-10. At this appointment, Plaintiff was examined by Harihan. _Id._ at 4. During

---

[1] Plaintiff described full restraints as wearing handcuffs behind one's back, while being bound by ankle shackles and a waist chain. Hr'g Tr. [DE-125] at 9.

the examination, Harihan made comments of a sexual nature to Plaintiff, which made Plaintiff uncomfortable. *Id.* at 11, 19. As Plaintiff exited the examination room, Harihan "smacked [Plaintiff] on his butt." *Id.* at 4-5,11, 19.

After the examination, Plaintiff informed Swain, the head nurse at the medical unit, of the sexual and verbal assaults he experienced during his examination by Harihan. *Id.* at 19. Swain told Plaintiff that she believed him because there had been other reports from other inmates of similar incidents with Harihan. Compl. [DE-l] at 7; Hr'g Tr. [DE-125] at 19-21. Plaintiff also told several other officers about his encounter with Harihan, but none of the officers took his complaints seriously and failed to provide Plaintiff with medical care. Compl. [DE-l] at 4-5, 12-13; Hr'g Tr. [DE-125] at 13. Following the May examination, Plaintiff said he felt "degraded" and "like less than a man" and that he had "no sense of security." Hr'g Tr. [DE-125] at 20.

In June 2009, Plaintiff continued to experience back pain. Compl. [DE-l] at 3; Hr'g Tr. [DE-125] at 10. On June 24, 2009, Plaintiff was escorted to the medical unit in full restraints. Compl. [DE-1] at 3; Hr'g Tr. [DE-125] at 11. Plaintiff described the examination room as a "conference exam room" with a window to the outside hallway. Compl. [DE-l] at3; Hr'g Tr. [DE-125] at 21. When Plaintiff arrived at the medical unit, Harihan was already in the examination room. Hr'g Tr. [DE-125] at 11. Plaintiff was surprised to see Harihan in the examination room because of the May 12, 2009 incident. *Id.* Due to the shortage of medical providers at Pasquotank, Plaintiff did not have the option of seeing a different doctor or physician's assistant if he wanted treatment. *Id.* at 21-22. During the examination, Harihan raised Plaintiff's shirt and rubbed Plaintiff's chest. Compl. [DE-l]
at 3-4; Hr'g Tr. [DE-125] at 12. Plaintiff tried to move away from Harihan, but his movements were limited because his hands were handcuffed behind his back. Hr'g Tr. [DE-125] at 12. Harihan then "braced hi[m]self up against" Plaintiff. *Id.* at 12. Harihan asked Plaintiff if Plaintiff had a big penis and whether he would let Harihan see his penis. Compl. [DE-l] at 4; Hr'g Tr. [DE-125] at 12. When Plaintiff tried to back away from Harihan, Harihan grabbed Plaintiff, reached into Plaintiff's pants, and fondled Plaintiff's penis. Compl. [DE-l] at 4; Hr' g Tr. [DE-125] at 12. Plaintiff then screamed out for help from Officer Ford, who was standing on the other side of the door. Pl's Com pl. [DE-l] at 4; Hr'g Tr. [DE-125] at 11, 13. Plaintiff continued to yell, and Harihan tried to calm Plaintiff down. Hr'g Tr.

6

> [DE-125] at 13. Plaintiff was very upset and left the examination room. Compl. [DE-l] at 4; Hr'g Tr. [DE-125] at 13. Once again, Plaintiff told several officers about the incident following the examination, but the officers did not take Plaintiff's complaints seriously or investigate the matter. Compl. [DE-l] at 4-5, 7; Hr'g Tr. [DE-125] at 13.
>
> Following the May 12 and June 24, 2009 incidents, Plaintiff began to have problems coping with the assaults and experienced cold sweats, nightmares, and recurring memories of the abuse. Hr'g Tr. [DE-125] at 15. Plaintiff described himself as "depress[ed], ang[ry], frustrated, and mental[ly] and emotionally unstable." Compl. [DE-l] at 9. As a child, Plaintiff was sexually molested by an uncle, and the feelings of being powerless and helpless he experienced as a child resurfaced. Compl. [DE-l] at 9; Hr'g Tr. [DE-125] at 14-15, 22-23. Plaintiff attempted to receive sexual counseling through the Prison Rape Elimination Act ("PREA") while at Pasquotank. Compl. Exs. C, E-G [DE-1-1] at 3-7; Hr'g Tr. [DE-125] at 15. However, Plaintiff was denied adequate medical treatment. Compl. [DE-l] at 7-12; Hr'g Tr. [DE-125] at 15-16. Specifically, Plaintiff was not properly screened for mental health problems and his treatments were often unreasonably delayed. Compl. [DE-l] at 8. Plaintiff eventually received counseling from Dr. Struz for two years and received medications for depression. Hr'g Tr. [DE-125] at 16. At the time of the hearing, Plaintiff was receiving mental health treatment but was still experiencing nightmares, lack of focus, and night sweats. _Id._ at 17.
>
> After three other inmates came forward with allegations against Harihan and nurses corroborated the reports of inappropriate behavior, Harihan resigned from Pasquotank. Compl. [DE-1] at 7; Hr'g Tr. [DE-125] at 25-26. In 2010, Harihan and the North Carolina Medical Board entered a consent order that resulted in Harihan's physician's assistant license being indefinitely suspended. Hr'g Ex. 2 [DE-123]; Hr'g Tr. [DE-125] at 27.

(M&R (DE 126))

Plaintiff objects to the factual record in this case asserting that the magistrate judge considered only the facts relevant to his original complaint, and not his January 22, 2013, amended complaint. The record, however, reflects that plaintiff's counsel conceded at the default judgment

7

hearing that the January 22, 2013, amended complaint was directed toward the supervisory defendants, which were voluntarily dismissed by plaintiff on June 2, 2015. See (Hr'g Tr. p. 7.) As a result, plaintiff's counsel represented to the magistrate judge that the amended complaint was not necessary for the hearing and agreed that the hearing testimony would be limited to the allegations contained in plaintiff's original complaint. (Id. p. 8.) Plaintiff, additionally, does not provide any factual support for this objection. Accordingly, the court OVERRULES this objection.

Plaintiff next objects to the M&R contending that the magistrate judge considered a letter from defendant Harihan as evidence. However, there is no evidence of the purported letter in the record and the magistrate judge does not reference any letter from Harihan in his M&R. As a result, the court OVERRULES this objection and finds that the magistrate judge's factual findings accurately reflect the record in this case. Accordingly, the court adopts in full the factual findings of the magistrate judge.

## DISCUSSION

A.  Motion to Appoint Counsel

Plaintiff requests that the court appoint him counsel to assist with executing the instant judgment. The court begins with plaintiff's motion to appoint counsel. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982));

8

see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

Plaintiff has demonstrated through the detail of his filings he is capable of proceeding *pro se*. Additionally, NCPLS attorney Michele R. Luecking-Sunman has advised plaintiff that she will provide him information to facilitate the collection of his judgment. (See DE 132, Attach.) Finally, plaintiff's claim is not complex and is not one in which exceptional circumstances merit appointment of counsel. Therefore, plaintiff's motion to appoint counsel is DENIED.

B.      Motions Related to the Execution of Judgment

Plaintiff filed a motion requesting that the court freeze defendant Harihan's assets and a motion to garnish defendant Harihan's retirement checks, which both relate to plaintiff's efforts to execute on his judgment. Federal Rules of Civil Procedure 62 and 69 govern the execution of a judgment. Rule 69 provides: "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution–and in proceedings supplementary to and in aid of judgment or execution–must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Rule 62(a) provides that "no execution may issue on a judgment . . . until 14 days have passed after its entry."

The court has not yet entered judgment in this case, and the 14-day time period has not began to run. As a result, the instant motions, which relate to the execution of plaintiff's judgment, are DENIED as PREMATURE. The clerk of court is DIRECTED to send plaintiff the Writ of Execution package.

C.      Memorandum and Recommendation

1. Standard of Review

Once default has been entered pursuant to Federal Rule of Civil Procedure 55(a), Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading. Upon default, the well-pleaded facts alleged in the complaint, as to liabiltiy, are deemed admitted. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, the court must consider whether the unchallenged facts support the relief sought. Id.

If the court determines that liability is established, it then must determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. Unlike allegations of fact, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." See Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). The court must make an independent determination regarding such allegations by, for example, conducting an evidentiary hearing or referring the matter to a magistrate judge to conduct such a hearing. Fed. R. Civ. P. 55(b)(2)(B).

Having referred the matter to a magistrate judge, the court must then review *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation

for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

2.  Analysis

The magistrate judge first found in his M&R that defendant Harihan alleged sufficient facts to show a sexual assault in violation of the Eighth Amendment. The magistrate judge based his conclusion on the fact that defendant Harihan made sexual comments to plaintiff on two occassions and sexually touched plaintiff. The magistrate judge correctly concluded that the combination of the unwanted sexual touching and sexual comments was sufficient to show a constitutional violation. See Woodford v. Ngo, 548 U.S. 81, 118 (2006) (Breyer, J., dissenting) (inmates sexually assaulted by guards have suffered grave deprivations of their Eighth Amendment rights); Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."); Wood v. Beauclair, 692 F.3d 1041, 1049–51 (9th Cir. 2012) (allegations that guard "stroked" prisoner's penis for a few seconds for guard's own gratification satisfied objective and subjective elements of Eighth Amendment claim); Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995). The court finds that the magistrate judge's finding was not clearly erroneous.

The magistrate next found in his M&R that plaintiff's claim was not barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA, in pertinent part, provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior

11

showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The magistrate judge concluded that plaintiff's alleged sexual assault qualified as a physical injury for the purposes of a § 1983 claim. This conclusion comports with that of other courts which have addressed the issue. See, e.g., Kahle v. Leonard, 563 F.3d 736, 741-42 (8th Cir. 2009); Liner v. Goord, 196 F.3d 132, 135 (2d Cir. 1999) ("[A]ccepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense."). The court again finds no error with the magistrate judge's conclusion.

Finally, the magistrate judge calculated plaintiff's damages resulting from the alleged sexual assault. The court begins with the magistrate judge's determination of compensatory damages. Consistent with Supreme Court precedent, the magistrate judge viewed damages under § 1983 according to principles derived from the common law of torts, seeking to arrive at a figure that would compensate plaintiff's actual losses and, if necessary, deter and/or punish a malicious deprivation of plaintiff's rights. See Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 (1986) ("[W]hatever the constitutional basis for § 1983 liability, such damages must always be designed to compensate injuries caused by the [constitutional] deprivation"). The magistrate judge correctly set forth that "in determining the propriety and amount of compensatory damages, courts look to factors such as loss of esteem, physical injury, psychological counseling, loss of income, the degree of distress, the context of the underlying events, corroborative evidence, the nexus between the challenged conduct and distress, and mitigating circumstances." Carrington v. Easley, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *4 (E.D.N.C. May 25, 2011).

Applying these standards, the magistrate judge recommended that plaintiff be awarded $5,000.00 in compensatory damages. Plaintiff objects to the magistrate judge's recommendation,

12

asserting that "it is clear cut evidence that the plaintiff experienced cold sweats, nightmares, and recurring memories of the abuse. The plaintiff also had to cope with feelings of depression, anger, frustration, that led to the plaintiff becoming mental and emotionally unstable. The plaintiff was further traumatize due to the fact that he was sexually assaulted as a child." (Pl.'s Obj. pp. 4-5.) Plaintiff, also, states that he received medical treatment for his mental and emotional distress and that he attempted to obtain sexual counseling through PREA while he was housed at Pasquotank. (Id.) Finally, plaintiff states that he continues to receive mental health treatment. (Id.)

The M&R reflects that the magistrate judge considered each of the factors set forth by the plaintiff when making his calculation as to compensatory damages. The magistrate judge's recommendation of $5,000.00 in compensatory damages, based upon the facts and circumstances of this case, comports with the amount of compensatory damages awarded by other district courts facing similar facts and circumstances. See, e.g., Morton v. Johnson, No. 7:13-cv00496, 2015 WL 4470104, at * (W.D. Va. July 21, 2015) (awarding $2,000.00 in compensatory damages where prison guard "hugged Morton, touched her breast, and rubbed down [her] stomach down to [her] private area and felt [her] up" and plaintiff received mental health treatment subsequent to the assault); Cleveland v. Curry, No. 7-CV-02809-NJV, 2014 WL 690846, at *1-2 (N.D. Cal. Feb. 21, 2014) (awarding between $2,000.00 and $10,000.00 in compensatory damages when defendant squeezed plaintiffs' genitalia for several seconds and plaintiffs suffered physical, mental, and/or emotional injuries); Ivey v. Toomey, No. 9:11-CV-85, 2012 WL 1995246, at *1-2 (E.D. Tex. Apr. 12, 2012) (awarding $25,000.00 in compensatory damages when guard sexually assaulted her resulting in bleeding and bruising), adopting mem. and recomm., No. 9:11cv85, 2012 WL 1995233 (E.D. Tex. June 1, 2012); compare, e.g., Etters v. Shanahan, No. 5:09-CT-3187, 2013 WL 787344,

at *5-7 (E.D.N.C. Feb. 6, 2013) (awarding $100,000.00 in compensatory damages against officer who forced inmate to perform oral sex "multiple" times and "brutally" raped inmate at least twice). Thus, the court OVERRULES plaintiff's objection to the magistrate judge's calculation of compensatory damages in this action.

In addition to his objection to the magistrate judge's award of compensatory damages, plaintiff objects to the magistrate judge's award of $5,000.00 in punitive damages on the grounds that such amount is insufficient to act as a deterrent to future instances of sexual assault. When considering plaintiff's request for punitive damages, the magistrate judge correctly stated that punitive damages are available in a § 1983 action "'when the defendant's conduct is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others.' Punitive damages are discretionary, and are awarded to punish the defendant for his outrageous conduct and to deter him and others from similar conduct in the future." Carrington, 2011 WL 2132850, at *4 (quoting Smith v. Wade, 461 U.S. 30, 54, 56 (1983)) (internal citation omitted).

Considering the facts and circumstances of this case, the magistrate judge correctly concluded that the alleged assaults were motivated by evil motive and intent and were carried out with reckless and callous disregard to plaintiff's federally protected rights. He further concluded that the award of punitive damages would punish defendant Harihan for his outrageous conduct and act as a deterrent. As to the adequacy of the $5,000.00 award, the court has made an identical award of punitive damages in a case presenting substantially similar facts to the case now before the court. See Carrington, 2011 WL 2132850, at *5 (awarding plaintiff $5,000.00 in punitive damages when defendant forced plaintiff to strip naked, grabbed plaintiff's penis, and attempted to perform fellatio

14

on him); compare, e.g., Etters, 2013 WL 787344, at *7 (awarding $100,000.00 in punitive damages against officer who forced inmate to perform oral sex "multiple" times and "brutally" raped inmate at least twice). Thus, the court OVERRULES plaintiff's objection to the magistrate judge's calculation of punitive damages in this action.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R (DE 126) to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge. The court GRANTS plaintiff's motions for default judgment (DE 94, 108, 109), and AWARDS compensatory damages in the amount of $5,000.00 and punitive damages in the amount of $5,000.00. Plaintiff's motion to appoint counsel (DE 124), motion "requesting for the courts to allow for the defendant [] Harihan retirement che[]ck be use to help pay the plaintiff for any damages that might we rewarded by the courts" (DE 136), and motion to freeze defendant Harihan's assets (DE 137) are DENIED. The clerk of court is DIRECTED to send plaintiff the Writ of Execution package.

SO ORDERED, this the 14th day of September, 2015.

LOUISE W. FLANAGAN
United States District Judge